**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**ALBERT H. FAULSTICK**                                                                 **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 2:13cv65-KS-MTP**

**SOUTHERN TIRE MART, LLC**                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendant Southern Tire Mart, LLC's

Motion to Strike Plaintiff's Expert Designation and to Exclude Testimony of Craig A.

Silva, CPA ("Motion to Strike") [56] and Motion for Summary Judgment [58].[1]  Having

considered the submissions of the parties, the record, and the applicable law, the Court

finds that the Motion to Strike [56] should be granted and that the Motion for Summary

Judgment [58] should be granted in part and denied in part.

**BACKGROUND**

Plaintiff Albert H. Faulstick alleges employment discrimination based on age

against his former employer, Southern Tire Mart, LLC ("Southern Tire").  Faulstick was

employed by Southern Tire as an airplane pilot from 2005 to 2011.  Southern Tire is a

commercial truck tire dealer that manufactures and sells new tires and retreads.

Southern Tire maintains its headquarters in Columbia, Mississippi, and has sixty-five

locations across the United States.  Southern Tire owns a company airplane and its

owners and employees regularly use the airplane to visit Southern Tire's stores and

customers.  Thomas Duff and James Duff (sometimes collectively referred to as the

---

[1] Also pending before the Court is the Plaintiff's Motion for Sanctions [61], which will
be addressed in a separate order.

"Duffs"), who are brothers, each own 50% of Southern Tire.

Southern Tire owned a Hawker 850, a mid-size airplane, during the majority of the time Faulstick was employed by the company.  The Hawker 850 is designed to be flown by two pilots.  Faulstick and Clyde Esplin, another pilot employed by Southern Tire, flew the Hawker 850 approximately two times per week during the course of their employment.

In or about September of 2011, Southern Tire purchased a Hawker 4000, a super mid-size airplane.  Neither Faulstick nor Esplin was certified to fly the Hawker 4000.  Faulstick contends that on October 1, 2011, the day before he was scheduled to leave for training to fly the Hawker 4000, Thomas Duff called him and advised that he was not to leave for training; that he was being reclassified as a back-up pilot; and that his employment would be terminated at the end of the year.  Faulstick further alleges that approximately two weeks later, James Duff told him Southern Tire was "looking for long term employment" when he asked why he was being terminated.  Clyde Esplin was allowed to receive training to fly the Hawker 4000.  However, Esplin was subsequently terminated in November of 2011.

Faulstick was seventy-two (72) years old when his employment relationship with Southern Tire was terminated, while Clyde Esplin was approximately forty-four (44) years old at the time of his termination.  Faulstick alleges that Southern Tire hired Charles Brantley Oursler as his replacement.  Oursler was thirty-four (34) when he was hired by Southern Tire on September 30, 2011.  Southern Tire contends that Faulstick was replaced by Jarrett L. Howard, who was hired on November 28, 2011, at the age of forty-two (42).  It appears to be undisputed that both Oursler and Howard required

training in order to be certified to fly the Hawker 4000 upon their retention by Southern Tire.  In short, Albert Faulstick and Clyde Esplin were out and Charles Oursler and Jarrett Howard were in as Southern Tire's pilots by January, 2012.

On March 7, 2012, Faulstick filed a Charge of Discrimination [58-9] with the Equal Employment Opportunity Commission ("EEOC").  Faulstick asserted that he was terminated because of his age and replaced by a younger employee in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  On September 25, 2012, the EEOC issued its Dismissal and Notice of Rights [58-10], advising Faulstick that he had ninety (90) days to file suit under the ADEA.

On December 7, 2012, Faulstick filed suit against Southern Tire in the United States District Court for the Eastern District of Louisiana.  (*See* Compl. [1].)  Subject matter jurisdiction is asserted under Title 28 U.S.C. § 1331 on the basis of a federal question.  The Complaint only presents one claim for relief:  Faulstick's allegation that Southern Tire violated the ADEA by terminating him on the basis of his age.  Faulstick seeks, *inter alia*, back pay, front pay, compensatory damages for emotional distress and mental anguish, liquidated damages under 29 U.S.C. § 626(b), and attorney's fees.  On April 4, 2013, the Louisiana District Court transferred the proceeding to this Court for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).  (*See* Order and Reasons [15].)

In seeking summary judgment, Southern Tire posits that Faulstick and Esplin were both terminated due to numerous performance and safety issues, and that Faulstick's age was not a factor in the termination decision.  Southern Tire also argues that Faulstick's stated opposition to moving up to the larger Hawker 4000 played a part

-3-

in the Duffs' decision to terminate him.  Southern Tire separately requests that Faulstick's financial expert, Craig A. Silva, CPA, be precluded from offering testimony in this action.  (*See* Mot. to Strike [56].)

## DISCUSSION

**I.      Motion to Strike [56]**

Faulstick's expert witness designation deadline was October 1, 2013.  (*See* Case Mgmt. Order [24] at p. 4.)  On March 13, 2014, Faulstick served a copy of an Expert Report [56-2] prepared by Craig Silva, CPA.  Silva was retained "as an expert accountant to evaluate" Faulstick's lost wages.  (Expert Report [56-2 at ECF p. 4].)  Silva calculates Faulstick's loss of earnings for the period of January 1, 2012 to December 31, 2016, at $625,655.  (Expert Report [56-2 at ECF p. 7].)

Southern Tire contends Silva should be excluded as an expert witness because his opinion is unreliable and because he was not timely designated in accordance with the Court's Case Management Order.  The Court need not consider the reliability of Craig Silva's opinions.  Faulstick's designation of Silva as an expert witness was clearly untimely and no adequate justification for the late disclosure has been provided to the Court.

Under Rule 26 of the Federal Rules of Civil Procedure, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  As to a retained expert witness, a party's disclosure must include a written report prepared by the witness containing, *inter alia*, "a complete statement of all opinions the witness will

express and the basis and reasons for them; [and] the facts or data considered by the witness in forming them . . . ." Fed. R. Civ. P. 26(a)(2)(B). The purpose behind the expert report requirement "is to avoid the disclosure of 'sketchy and vague' expert information, as was the practice under the former rule." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) (citing Fed. R. Civ. P. 26 advisory committee's note). Expert disclosures are to be made in the sequence ordered by the court and are to be supplemented in accordance with Rule 26(e). *See* Fed. R. Civ. P. 26(a)(2)(D)-(E). Under this Court's Local Uniform Civil Rules, absent a finding of just cause, a party's failure to make full expert disclosures by its "expert designation deadline is grounds for prohibiting introduction of that evidence at trial." L.U.Civ.R. 26(a)(2). A party seeking to designate an expert without providing full disclosure will not be considered to have met its expert designation deadline and the disclosure may be stricken upon motion or by the court *sua sponte*. L.U.Civ.R. 26(a)(2)(B); *see also* Fed. R. Civ. P. 37(c)(1).

Craig Silva's March 13, 2014 Expert Report [56-2] was served approximately five (5) months subsequent to the expiration of Faulstick's October 1, 2013 expert witness designation deadline. Faulstick did not disclose any of the expert witness information required by Rule 26(a)(2)(B), such as a complete statement of all opinions Silva will express and the reasons for them, prior to October 1. Accordingly, Faulstick's designation of Silva was late and the Court considers whether Silva should be precluded from offering expert testimony at trial due to this discovery violation. District courts possess broad, considerable discretion in discovery matters. *See Sierra Club, Lone Star Chapter*, 73 F.3d at 569 (citations omitted). That discretion, however, is to be

guided by the following four factors in determining whether to exclude untimely expert witness testimony:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

Faulstick offers no explanation as to why he failed to make full expert disclosures regarding Craig Silva prior to his expert witness designation deadline.  Therefore, the first *Hamburger* factor weighs in favor of exclusion.

Silva's opinions have no bearing on liability or the outcome of Southern Tire's Motion for Summary Judgment [58].  The opinions only weigh upon certain of Faulstick's damage claims.  To the extent Silva's testimony is considered to be important to Faulstick's ability to obtain certain damages, "the importance of the testimony underscores how critical it was for" Silva to have been timely designated. *Hamburger*, 361 F.3d at 883.  Thus, the second *Hamburger* factor only slightly militates against exclusion.

The Court finds that Southern Tire would be prejudiced if Silva provided expert testimony at trial.  Faulstick served Silva's Expert Report approximately four (4) months after the expiration of Southern Tire's expert designation deadline and with only nineteen (19) days remaining before the close of discovery.  As a result, Southern Tire was prohibited from timely designating an expert witness to address Silva's opinions.  It is unreasonable to expect a party to alter its preparation of the litigation, seek permission to designate an expert witness out of time, retain and designate an expert,

and conduct expert witness discovery—all within the span of 19 days—because its opponent violates a scheduling order.  The Fifth Circuit has affirmed the exclusion of expert testimony under analogous circumstances.  *See Geiserman*, 893 F.2d at 791 (rejecting the plaintiff's contention that "a couple weeks" delay in designating an expert witness would not have prejudiced the defendant; the delay "would have disrupted the court's discovery schedule and the opponent's preparation").  Faulstick's argument that Southern Tire cannot claim prejudice because it was put on notice of his plan to retain Craig Silva prior to October 1, 2013, is not well taken.  Faulstick's March of 2013 opposition to the transfer of venue and September 18, 2013 discovery responses only identify Silva as a potential expert witness.  For example, Faulstick's response to Interrogatory No. 4 states in pertinent part that "Plaintiff has not retained any experts in this matter, however, it is anticipated that Plaintiff may seek to retain . . . Craig Silva . . . to address loss of earnings . . . ."  (Doc. No. [65-3] at p. 5.)  When October 1 came and passed without any expert report from Silva, it was reasonable for Southern Tire to presume that Faulstick had decided not to retain Silva and that no rebuttal expert testimony regarding loss of earnings would be necessary.  Furthermore, neither Faulstick's opposition to the transfer of venue nor his discovery responses supply any of Silva's opinions.

A continuance would likely cure the aforementioned prejudice.  On the other hand, a continuance would also result "in additional delay and increase[ ] the expense of defending the lawsuit."  *Hamburger*, 361 F.3d at 883 (citation omitted).  Further, "a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders."  *Geiserman*, 893 F.2d at 792 (citing *Bradley v. United*

-7-

*States*, 866 F.2d 120, 126 (5th Cir. 1989)).  The Court also notes that neither Faulstick nor Southern Tire requests a continuance in connection with Craig Silva's untimely designation.  On the whole, the Court's consideration of the *Hamburger* factors counsels in favor of the exclusion of Craig Silva and a grant of the Motion to Strike [56].

## II.   Motion for Summary Judgment [58]

### A.   Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*  "An issue is material if its resolution could affect the outcome of the action."  *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence.  *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to

-8-

be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).  Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**B.    Analysis**

Southern Tire argues that Faulstick's "claim fails as a matter of law and should be dismissed with prejudice because the facts are uncontroverted that there has been no ADEA violation."  (Def.'s Mot. for SJ [58] at ¶ 1.)  The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."  29 U.S.C. § 623(a)(1).  To establish a violation of the ADEA, a claimant "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119

(2009)).[2]  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).  When a plaintiff relies on circumstantial evidence to prove age discrimination, courts within the Fifth Circuit apply the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See, e.g.*, *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Faulstick contends there is direct evidence of age-based discrimination and that his claim survives summary judgment under the *McDonnell Douglas* analysis.  Each contention will be addressed in turn.  The Court will then address Southern Tire's alternative request for summary judgment as to certain of Faulstick's damage claims.

### 1.    Direct Evidence

Faulstick characterizes two statements as direct evidence of his termination being based on age.  First, Faulstick cites James Duff's alleged statement that Southern Tire was looking for "long term employment" when Faulstick asked why he was being released.[3]  Second, Faulstick points to references to his age contained in Southern

---

[2] "'[B]ut-for cause' does not mean 'sole cause.'"  *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (finding persuasive the Tenth Circuit's holding in *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277-78 (10th Cir. 2010), that multiple factors contributing to an adverse employment decision will not negate the existence of an ADEA violation if age was the deciding factor).

[3] Faulstick's Complaint, interrogatory responses, and deposition testimony reference this purported statement**.  (***See* Compl. [1] at ¶ 13; Doc. No. [65-3] at pp. 6-7; Faulstick

Tire's position statement submitted to the EEOC on March 14, 2012:  "Mr. Faulstick did

not want, *at his age*, to go through the 28 day intensive training class and re-learn how

to fly/operate a new plane, such as the Hawker 4000. . . .  Insurance regulations would

not allow Mr. Al Faulstick, *age 72*, to fly and operate this much larger jet."  (Def.'s

Position Statement [66-2 at ECF pp. 2, 3]) (emphasis added).[4]

"In order for an age-based comment to be probative of an employer's

discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to

conclude without any inferences or presumptions that age was an impermissible factor

in the decision to terminate the employee."  *Moss*, 610 F.3d at 929 (citation omitted).

Remarks or comments may constitute evidence of discrimination if the comments "are:

_____

Dep. [58-3] 56:19-59:16.)  Southern Tire denies that James Duff made the statement.
The factual conflict over whether James Duff told Faulstick that Southern Tire was
looking for long term employment must be resolved in Faulstick's favor at this stage of
the litigation.  *See Valle v. City of Houston*, 613 F.3d 536, 540 n.1 (5th Cir. 2010)
(finding that the district court improperly resolved a factual dispute in favor of the party
seeking summary judgment).

   [4] Southern Tire's position statement to the EEOC was prepared by its human
resources manager, Douglas Blackwell.  On one hand, Defendant refers to this
statement as a mere letter, and "not an affidavit or other competent summary judgment
evidence."  (Def.'s Reply to Pl.'s Resp. in Opp. to Mot. for SJ [69] at p. 5.)  On the other
hand, Defendant characterizes the document as "Southern Tire's Position Statement" to
the EEOC.  (Def.'s Mem. Brief in Supp. of Resp. in Opp. to Mot. for Sanctions [67] at p.
3.)  Blackwell testified at deposition that he conducted an investigation and prepared the
statement in response to Faulstick's EEOC charge of age discrimination.  (*See*
Blackwell Dep. [66-11] 66:7-13, 75:15-20, 162:13-163:5.)  Blackwell further testified that
he "respond[s] to all EEOC claims . . . ."  (Blackwell Dep. [66-11] 167:20-21.)  No
evidence has been presented showing that Blackwell was unauthorized to prepare the
position statement on behalf of Southern Tire.  Accordingly, "Southern Tire's Position
Statement" may be considered in the Court's summary judgment analysis as an
opposing party's statement under Federal Rule of Evidence 801(d)(2)(C) or (D).  *Cf.*
*FTC v. Hughes*, 710 F. Supp. 1520, 1523 (N.D. Tex. 1989) (denying the defendant's
motion to strike certain documents from the summary judgment record, which were
admissible under Rule 801(d)(2)(A) and (B)).

1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Id.* Mere stray remarks in the workplace are not actionable. *See Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999).

There is no need to apply the above-quoted four factors to Faulstick's purported direct evidence of age discrimination because it does not directly and unambiguously evince discriminatory animus. Even Faulstick acknowledges that inferences and presumptions are required to consider James Duff's statement that Southern Tire was looking for "long term employment" as proof of his termination being based on age. The statement "*implies* that Southern Tire wanted someone younger who might be expected to stay on the job longer. At the very least, a reasonable jury certainly should be permitted *to draw that inference* within the context of all the evidence presented at trial." (Pl.'s Mem. in Opp. to Mot. for SJ [64] at p. 8) (emphasis added). The Fifth Circuit has found comments similar to those attributed to James Duff to fall short of being considered direct evidence of age-based discrimination. *See Kilgore v. Brookeland Indep. Sch. Dist.*, 538 Fed. Appx. 473, 476 (5th Cir. 2013) (agreeing with the district court that a supervisor's statement that the plaintiff was "eligible for retirement" failed to constitute direct evidence of discrimination); *Moss*, 610 F.3d at 929 (same result with respect to the statement that the defendant was looking to retain someone at a "more junior level"); *Sandstad*, 309 F.3d at 897-98 (rejecting the plaintiff's reliance on the defendant's plan to "identify . . . younger managers . . . for promotion to senior management over the next 5+ years, ultimately replacing senior management" as direct evidence of age-based animus since an inference was required to find that the

defendant's plan was to fire senior managers in favor of younger trainees).

The remark in Southern Tire's EEOC position statement that "Faulstick did not want, at his age, to go through the 28 day intensive training class and re-learn how to fly/operate a new plane" could be interpreted to reflect the feelings of Faulstick, as opposed to Southern Tire, with respect to the relationship between his age and the company's purchase of the Hawker 4000.  (Def.'s Position Statement [66-2 at ECF p. 2].)  Standing alone, the statement that "[i]nsurance regulations would not allow Mr. Al Faulstick, age 72, to fly" arguably indicates that Faulstick's age played a part in Southern Tire's employment decision.  Yet, the following portion of the position statement provides that Faulstick was terminated for cause:  "Both previous pilots [Faulstick and Esplin] on the Hawker 850 were terminated due to cause.  The chief pilot was terminated for flying with behavior deemed unsafe and disconcerting.  Mr. Faulstick was very aware of these actions and did not do anything to correct or bring these improper actions to light."  (Def.'s Position Statement [66-2 at ECF p. 2].)  In the Court's view, Southern Tire's position statement, taken as a whole, is ambiguous and fails to constitute direct evidence of age discrimination.  *Cf. Manaway v. Med. Ctr. of Se. Tex.*, 430 Fed. Appx. 317, 324 (5th Cir. 2011) (holding that an excerpt from a supervisor's memorandum—construed in a vacuum—could be considered direct evidence of discriminatory retaliation, but concluding that the excerpt was ambiguous and not actionable since other portions of the memorandum addressed the plaintiff's deficient work performance).  Thus, the Court must determine if Faulstick has proffered sufficient circumstantial evidence to avoid summary judgment on his ADEA claim.

### 2.    Circumstantial Evidence

-13-

Under the *McDonnell Douglas* framework, a claimant "relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (citation omitted). If the employer meets its burden, the plaintiff is then afforded an opportunity to show that the employer's reason is a pretext for discrimination. *Id.* "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).[5]

### a.     Prima Facie Case

In order to establish a prima facie case of age discrimination, a plaintiff must show: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge;[6] and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

---

[5] Some of the authorities cited in this section of the opinion involve federal statutes other than the ADEA, such as Title VII, given the applicability of *McDonnell Douglas* to various forms of employment discrimination. *See, e.g.*, *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008); *Pagano v. Frank*, 983 F.2d 343, 347 n.5 (1st Cir. 1993).

[6] The ADEA protects individuals who are at least forty (40) years of age. 29 U.S.C. § 631(a).

-14-

"Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation and internal quotation marks omitted).  Only the second element is in dispute between the parties for purposes of summary judgment.  Faulstick was 72 at the time of his termination, and he was replaced by someone substantially younger, either Charles Oursler (age 34) or Jarrett Howard (age 42).[7]

Southern Tire argues that Faulstick was unqualified for the position in question because he was not type-rated or otherwise qualified to fly the Hawker 4000 at the time of his termination.  "[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988).  In *Bienkowsi*, the Fifth Circuit explained this means the plaintiff has not suffered a physical disability, lost a necessary license, or experienced some other circumstance rendering him unfit for the job for which he was retained.  *Id.* at 1506 n.3.  This rule from *Bienkowski* has been carried forward by several Fifth Circuit decisions.[8]  No claim is made that Faulstick

---

[7] The fourth element is not negated by Jarrett Howard being in the protected class. "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996).

[8] *See, e.g.*, *Holliday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917, 921 (5th Cir. 2012); *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350-51 (5th Cir. 2007);

suffered from any physical disability or lost a professional license during his employment with Southern Tire.  It appears that Faulstick's fitness or qualifications for flying were substantially the same at the time of his hire and his subsequent termination.  Thus, Faulstick was sufficiently qualified for continued employment with Southern Tire under *Bienkowski*.

Southern Tire's argument regarding Faulstick's qualifications focuses on the Fifth Circuit's decision in *Martin v. Lennox International Inc.*, 342 Fed. Appx. 15 (5th Cir. 2009).  Russell Martin ("Martin") began working as a pilot for Lennox International Inc. ("Lennox") in 1995.  *Martin*, 342 Fed. Appx. at 16.  Martin suffered a heart attack in June of 2005, which resulted in his being grounded by the Federal Aviation Administration ("FAA").  *Id.*  Under FAA regulations, Martin was grounded for a six-month recovery period and had to be medically re-certified in order to return to piloting.  *Id.*  In January of 2006, Martin informed Lennox that his medical re-certification had been delayed and he was uncertain as to when he would be able to return to his former position.  *Id.*  Martin was terminated on January 31, 2006.  *Id.*  Martin subsequently filed suit against Lennox, alleging violations of the ADEA and other causes of action.  *Id.* at 16-17.  The district court granted summary judgment in favor of Lennox and the Fifth Circuit affirmed.  *Id.*  "Martin was not qualified to work as a pilot because he lacked the required FAA certification at the time he was terminated."  *Id.* at 17.  Consequently, Martin was unable to establish a prime facie case of discrimination under the ADEA.  *Id.*  Martin's

---

*Young v. Harris Health Care, Inc.*, 226 F.3d 643, 2000 WL 1029180, at *3 (5th Cir. July 14, 2000); *accord Seldon v. Grenada Lake Med. Ctr.*, No. 3:06cv012, 2007 WL 1098483, at *2 (N.D. Miss. Apr. 9, 2007).

contention that his supervisor improperly refused to send him to flight training during his medical leave of absence was rejected because, among other reasons, Martin was not certified to fly at the time of the subject training. *Id.* at 18.

*Martin* is distinguishable from this case in several respects. Unlike Martin, Faulstick did not suffer any physical illness during the course of his employment resulting in the FAA taking away his certification to pilot airplanes. Furthermore, Faulstick could still fly airplanes at the time of his termination. He just could not pilot the Hawker 4000, which was no different from when he was initially hired by Southern Tire. Also dissimilar to Martin, Faulstick was medically certified by the FAA when he was precluded from receiving training to operate the Hawker 4000. Therefore, the Court is unable to say that Southern Tire's "refusal to allow . . . [Faulstick] to attend the training . . . could not have affected his employment situation . . . ." *Martin*, 342 Fed. Appx. at 18. Southern Tire's suggestion that it would have terminated Faulstick due to safety concerns even if he was qualified to fly the Hawker 4000, is better addressed at the latter stages of the *McDonnell Douglas* analysis. *See Berquist*, 500 F.3d at 351 (evidence regarding the plaintiff's performance issues "does not prove a lack of qualifications at the prima facie stage") (citations omitted).

Ultimately, Southern Tire's argument against Faulstick establishing a prima facie case is foreclosed by its failure to hold its other retained pilots to the same qualifications standard. "An employer may establish job requirements, and rely on them in arguing that a prima facie case is not established because the employee is not 'qualified.'" *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). Yet, a plaintiff's failure to meet an objective employment requirement does not make him unqualified if the employer

refuses to apply the requirement to its other employees. *Smith v. City of St. Martinville*, No. 13-31233, 2014 WL 3513208, at *4 (5th Cir. July 17, 2014) (citing *Johnson*, 351 F.3d at 620-21, 623-34); *see also El-Bawab v. Jackson State Univ.*, No. 3:11cv553, 2013 WL 3884128, at *5 (S.D. Miss. July 26, 2013) ("[A] plaintiff may overcome a lack of objective qualifications at the prima facie stage if he can establish that the employer applied an objective requirement subjectively by promoting employees lacking the qualification.") (citation omitted). Clyde Esplin was permitted to receive training to fly the Hawker 4000 before he was terminated, while Charles Oursler and Jarrett Howard attended training in order to be certified for this airplane after they were retained by Southern Tire. As a result, a fact issue exists as to whether Faulstick's lack of certification as to the Hawker 4000 rendered him unqualified for employment with Southern Tire. Faulstick has made the "very minimal showing" required to proceed past the prima face stage on his claim of age discrimination. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (citation omitted).

### b. Legitimate, Nondiscriminatory Reason

The defendant's reason for the adverse employment action need not be persuasive or credible. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad*, 309 F.3d at 898. Instead, the defendant's burden is to "produce evidence, 'which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (quoting *Hicks*, 509 U.S. at 509).

Southern Tire asserts that Faulstick and Esplin were discharged because the Duffs were dissatisfied with the performance of both pilots and because they feared for their safety while flying with Faulstick and Esplin.  "[T]he owners had multiple issues with the Plaintiff's performance including that he acquiesced in and failed to report the unsafe practices of Esplin . . . ."  (Def.'s Mem. Brief in Supp. of Mot. for SJ [59] at p. 15.)  The unsafe practices of Esplin that Faulstick purportedly failed to report included Esplin falling asleep in the cockpit, and Esplin ascending and descending at such a rate of speed that it caused the Duffs to suffer ear and sinus problems.  Also, both Esplin and Faulstick allegedly engaged in certain unsafe flying practices, such as failing to check weather forecasts before taking off and flying with compromised tires.  Segments of the summary judgment record, taken as true, support these assertions.  (*See* T. Duff Dep. [58-1] 24:5-25:21, 27:17-28:11, 115:18-116:20, 182:12-183:2, 184:7-186:1; J. Duff Dep. [58-7] 19:10-25, 21:2-23, 25:22-26:11, 29:2-18, 45:4-46:10; Def.'s Suppl. Resps. to Pl.'s First Set of Interrogs. [58-4] at pp. 5-7.)  The Court thus determines that Southern Tire has articulated legitimate, nondiscriminatory reasons for the subject employment action. *Cf. Maestas v. Apple, Inc.*, 546 Fed. Appx. 422, 428 (5th Cir. 2013) (holding that the plaintiff's "work performance issues" constituted a legitimate, nondiscriminatory reason for his termination); *Gonzales v. Dupont Powder Coatings USA, Inc.*, 546 Fed. Appx. 378, 379 (5th Cir. 2013) (finding no error in the district court's determination that the defendant met its burden of production in relying on the plaintiff's safety violations as the basis for his discharge).

### c.    Pretext

Plaintiff is now afforded a full and fair opportunity to show that the Defendant's proffered explanation is not true, i.e., that it is a pretext for discrimination. *See Patrick v. Ridge*, 394 F.3d 311, 315, 320 n.34 (5th Cir. 2004) (citations omitted). Pretext may be exposed "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss*, 610 F.3d at 922 (citation and internal quotation marks omitted). At this stage of the *McDonnell Douglas* analysis, "the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000) (citing *Shackelford v. Deloitte & Touche, LLC*, 190 F.3d 398, 404 (5th Cir. 1999)). Mere speculation or subjective beliefs will not preclude summary judgment. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. However, there may also be cases where a showing of pretext will be insufficient to create an inference of "discrimination, such as when 'the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision . . . .'" *Machinchick*, 398 F.3d at 351 n.14 (quoting *Reeves*, 530 U.S. at 148).

For the following reasons, the Court determines that there is a substantial conflict in the evidence pertaining to the justification for Faulstick's termination and his ADEA claim will advance to trial. First, Southern Tire's grounds have changed over time. "[A]n employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are

pretextual." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412
n.11 (5th Cir. 2007) (citing *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)).[9]
Southern Tire's March 14, 2012 position statement to the EEOC appears to identify
three bases for Faulstick's discharge:  (i) "Faulstick did not want, at his age, to go
through the 28 day intensive training class and re-learn how to fly/operate a new plane";
(ii) Faulstick was terminated for cause because he failed to correct or report Esplin's
unsafe practices; and (iii) insurance regulations would not permit "Faulstick, age 72, to
fly and operate this much larger jet."  (Def.'s Position Statement [66-2 at ECF pp. 2-3].)
However, Southern Tire's second position statement to the EEOC, dated July 25, 2012,
advises that Faulstick "was terminated due to violations of safety rules and for no other
reason"; admits there are no known insurance "regulations preventing . . . [Faulstick]
from flying a private/corporate jet due to his age"; and, does not rely upon Faulstick's
purported lack of interest in receiving training to fly the Hawker 4000 as a basis for its
employment decision.  (Def.'s Second Position Statement [64-6 at ECF pp. 5, 8].)[10]
Southern Tire's February 5, 2013 Answer [5], November 22, 2013 Responses to

---

[9] *See also Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 Fed. Appx.
328, 336-37 (5th Cir. 2014) (vacating, in part, the district court's grant of summary
judgment where there was a conflict in the defendant's reasons for not renewing an
administrative assistant's employment); *King v. Bd. of Trs. of State Insts. of Higher
Learning*, No. 3:11cv403, 2014 WL 1276477, at *6 (S.D. Miss. Mar. 27, 2014)
("[E]vidence of a changing story raises an issue of fact as to the basis of Defendants'
decision.") (citations omitted).

[10] The Court may consider this second position statement, which Southern Tire
"believed to be true and correct in all respects" (Doc. No. [64-6] at ECF p. 3 n.1]), in
ruling on summary judgment since it, like Southern Tire's original position statement,
falls under the scope of Federal Rule of Evidence 801(d)(2)(C) or (D).  *See supra* note
4.

Plaintiff's Requests for Admissions [62-8], and December 10, 2013 Responses to

Plaintiff's First Set of Interrogatories [62-7] largely correspond with its second position

statement to the EEOC.[11]  Yet, in March and April of 2014, Southern Tire's

representatives testified at deposition that Faulstick was no longer employed by

Southern Tire primarily because he did not want to move up to the larger Hawker 4000,

a position which Southern Tire appeared to have previously abandoned.  The

representatives further provided that Faulstick voluntary left Southern Tire, as opposed

to being terminated.  The following excerpts from the depositions are instructive:

> Q.    It is your position that Southern Tire Mart fired Al Faulstick; is that right?
>
> A.    My position is that every time we looked at a new airplane, Al basically said he didn't want to move up into that type plane.  We went from a very light jet to a light jet to a medium jet, and at the time we decided to make a change with Al and him with us.  He just didn't want to move up to it.
>
> Q.    Okay.  So he was fired?
>
> A.    Al had been telling me he didn't want to move up to the other jet, so I can't say he was fired or say he quit.  If I fire somebody, I don't normally give them four months' severance.
>
> Q.    So then he wasn't fired?  I'm just trying to --
>
> A.    I can't say, sir.
>
> Q.    You can't say.  All right.
>
> A.    I'd say it was a mutual agreement.
>
>        . . . .

---

[11] Southern Tire's Answer and Responses to Requests for Admissions both admit that Faulstick's employment was terminated.  Southern Tire's Responses to Plaintiff's First Set of Interrogatories state that Faulstick was "terminated for safety violations." (Doc. No. [62-7] at p. 4.)

Q.      Okay.  So when this asks for all the reasons for Mr. Faulstick's
        termination, what's being stated here in this paragraph at the bottom of 4
        on to the next page all deal with incidents involving Mr. Esplin and his kids
        around the hanger site.  These were all issues you only came to hear
        about after Mr. Faulstick's [sic] was terminated?

A.      I cannot answer that question because I can't say that Mr. Faulstick was
        terminated.

Q.      Okay.

A.      Mr. Faulstick continually told me he did not want to move up to a larger
        airplane.

(T. Duff Dep. [58-1] 29:8-30:1, 80:21-81:11.)

A.      The only pilot that I have ever terminated was Clyde Esplin.  That has
        been the only pilot that I have ever terminated.  Al was not terminated.

Q.      Okay.  And why do you say he was not terminated?

A.      I don't know.  He was never terminated.  We were told that -- you know,
        most of this was handled with my brother, but from my recollection, he
        was -- he decided that he didn't want to make the transition to the bigger
        plane because our -- we just needed -- our missions were longer, so we
        needed a larger plane, and we decided to get one.
                I was very unhappy with the way things were going with both of
        them.  And when he kind of made it known that he didn't want to make the
        transition to the other plane, the bigger plane, and I was very comfortable
        with that.  But he was never terminated by me or anybody that I know of.

        . . . .

Q.      Do you deny the request for admission, as far as you know, based on your
        own personal knowledge, that Mr. Faulstick was involuntarily terminated?

A.      Al was never fired by Tommy or myself.

        . . . .

Q.      Okay.  So you don't know if he was terminated for safety violations?

A.      Not by me.

        . . . .

-23-

Q.     Do you agree or disagree with the statement that Al Faulstick was
       terminated on October 1st, 2011 due to violation of safety rules?

A.     No.  I agree that he didn't want to make the transition, and I agree I didn't
       know about the safety rules until Al told us what was going on.

Q.     Okay.  That was after his employment ended?

A.     Well, yes.  He was getting paid, but he no longer had a plane.

Q.     So the decision not to let him in the plane had nothing to do with any
       violation of safety rules?  It was because he --

A.     Chose not to.

Q.     -- chose not to?

A.     Sure.

(J. Duff Dep. [58-7] 14:17-15:11, 34:3-7, 54:5-7, 97:19-98:11.)

Q.     Okay.  So is it your understanding that Mr. Faulstick was terminated?

A.     You know, we didn't -- if I was going to explain, I would say that Mr. Al left
       voluntarily, for the fact that he was not willing to move up to a mid-sized jet
       and go through 28, or whatever days, of intensive training.  I don't know
       what they do.  But he was not willing to move up to that and we didn't have
       anything else for him that would pay him the kind of money that he
       wanted.
              And we considered it.  We considered trying to find somewhere for
       him, but we didn't have anything that -- I mean, our system managers
       don't even make that kind of money, more or less a greeter or a chauffeur,
       or whatever you want to call it.
              So on November the 30th is when I would have told Al, me,
       personally, that we don't have anything here for you, Al.

Q.     I understand that, Mr. Blackwell, but when was -- All right.  Let me ask you
       this:  Was Mr. Faulstick terminated, and if so, when was he terminated?

A.     I don't like the word -- what you're trying to imply here, terminated.  My
       feeling is that Al voluntarily left of his own accord because he wasn't
       willing to move up to a mid-sized jet.

              . . . .

-24-

Q.    Do you ever recall either owner saying, we are firing Al?

A.    Not until after we got the EEOC charges and all and the investigation started.  Then some things came up that if I would have been involved in them early into it, then there probably would have been the term, you're fired, Al.

Q.    I understand, but that's not really the question, is it?  I mean, the question is --

A.    I'm not sure what your question is.

Q.    Well, the question is:  Did the owners ever tell you, we are firing Al Faulstick?

A.    I don't remember them ever telling me that.  I remember them telling me that he will no longer be a pilot for us because he's not willing to move up to a mid-sized jet.  I do remember them telling me that.  And I do remember them telling me that he wants another position with the company.

       . . . .

Q.    So if they didn't terminate him then, then when it says here he was terminated on October 1st, 2011, then that's not correct?

A.    I don't believe that he was terminated October the 1st, 2011.

Q.    So that portion of that response is not correct?

A.    It's misleading.

Q.    Okay.  Misleading.

A.    Not necessarily incorrect, but misleading.

       . . . .

Q.    All right.  So I'm going to ask the question again.  It says, Both were terminated for safety violations.  Was Al terminated for safety violations?

A.    We didn't have to terminate Al, and I'm going to tell you again, because he voluntarily did not want to move up to a mid-sized jet.  So, therefore, he left on his own accord.

-25-

Q.     So he was not terminated for safety violations?

A.     Not by Southern Tire Mart at that time.  But, again, after March when all these other things came out, he would have definitely been terminated for all these safety violations.

Q.     I think I --

A.     But, again, in November, Tommy and Jim both were aware after he poured his soul out that there were safety violations.  So, you know, they didn't have to deal with it because he was voluntarily leaving.

. . . .

Q.     Do you have a memory of ever giving information that Mr. Faulstick was terminated for safety violations?

A.     Only after the EEOC charges came in and we investigated all the matters into his age discrimination case.

. . . .

Q.     Okay.  And, again, I know we've gone through it a lot, but I just want to make sure I'm clear again. It's your understanding that Mr. Faulstick was not terminated for safety violations, right?

A.     And let me answer it one more time. That because Al was not willing to move up to the mid-sized jet, they didn't have to deal with these safety issues with Al.  But, again, if Al would have said, no, I want to move up to the mid-sized jet, I want to and I'm excited about it, then they would have had to deal with these safety issues.

Q.     And what would they have done?

A.     They probably would have terminated him.

(Blackwell Dep. [66-11] 45:16-46:17, 48:24-49:17, 50:8-18, 55:18-56:12, 62:15-20, 125:14-126:6.)  Also in March of 2014, Southern Tire served supplemental interrogatory responses that omitted the references to Faulstick being "terminated," which were contained in its original responses.  (*See* Doc. No. [58-4].)  The preceding twists and

turns "raise[] an issue of fact as to the basis" for Southern Tire's employment decision. *King*, 2014 WL 1276477, at *6.

Second, the summary judgment record evinces facts competing with the assertion made in the depositions of Southern Tire's representatives that Faulstick was no longer employed by the company primarily because he did not want to move up to a larger airplane. Faulstick submitted an affidavit in the EEOC proceeding providing that "[a]t no time did I state to anyone at Southern Tire Mart, LLC that I did not want to take the training course for the new aircraft . . . ." (Faulstick Aff. [64-5] at ¶ 6.) Faulstick further stated that arrangements had been made for him to attend the training course, including airline reservations, prior to Thomas Duff advising that he would not be attending the class. (*See* Faulstick Aff. [64-5] at ¶¶ 7-9.) At deposition, Faulstick confirmed the accuracy of these averments; stated that he never told Douglas Blackwell or Southern Tire's owners that he did not want to move up to a new airplane; and testified that he "was looking forward to" the new airplane "[b]ecause it costs a lot of money and it's a feather in a pilot's cap to upgrade into a larger aircraft . . . ." (Faulstick Dep. [58-3] 76:11-25, 165:19-166:20.) Faulstick further testified that he told Thomas Duff he was looking forward to the larger airplane many times. (*See* Faulstick Dep. [58-3] 76:21-77:4.) "[A] genuine issue of material fact is obviously present where one party testifies to one account of the matter in interest and the other party swears otherwise." *Ill. Cent. R.R. Co. v. Harried*, 681 F. Supp. 2d 772, 775 (S.D. Miss. 2009) (citation omitted); *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (holding that it was for the jury to weigh and choose between the parties' conflicting versions of the plaintiff's termination).

Third, several circumstances militate against Faulstick's purported safety and performance issues being considered the basis for his discharge from Southern Tire.  It seems that Southern Tire was not made aware of many of the alleged safety violations it sometimes relies on in support of its termination decision, such as Esplin and Faulstick failing to obtain clearance before taking off and Faulstick acquiescing to Esplin allowing his children to play around the aircraft, until after the decision was made that Faulstick would no longer be piloting for the company.  (T. Duff Dep. [58-1] 30:14-31:12, 73:23-74:8, 80:3-20; J. Duff. Dep. [58-7] 97:8-98:5; Blackwell Dep. [66-11] 48:24-49:5, 85:9-24, 88:4-89:2.)  An "employer could not have been motivated by knowledge it did not have and it cannot now claim the employee was fired for the nondiscriminatory reason."  *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356-57, 360, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995) (holding that after-acquired evidence may weigh upon a plaintiff's ability to recover certain damages, but it does not foreclose all relief under the ADEA); *see also Patrick v. Ridge*, 394 F.3d 311, 318-20 (5th Cir. 2004) (rejecting the defendant's reliance on after-acquired evidence at the second stage of the *McDonnell Douglas* inquiry).[12]  The following particulars stand in stark contrast to allegations of safety violations, such as flying through thunderstorms and flying with unsafe tires, that Southern Tire's representatives claim knowledge of prior to Faulstick's

---

[12] Southern Tire cites to *Wilks v. Fedex Ground Package System, Inc.*, 359 F. Supp. 2d 539 (S.D. Miss. 2005), in support of its argument that it can rely on evidence obtained after the adverse employment decision.  *Wilks* is inapposite since it concerned a refusal to hire, the plaintiff did not proceed past the prima facie stage, and the after-acquired evidence (plaintiff's felony conviction) was undisputed.  *See* 359 F. Supp. at 542-43.  Faulstick does not admit committing any safety violations and he has presented sufficient evidence to require Southern Tire to produce legitimate, nondiscriminatory reasons *for* its employment decision.

termination:

- Southern Tire has admitted that Faulstick "did not receive any reprimands or written notices during his employment . . . ."[13]

- On November 19, 2011, after Faulstick's employment "was terminated, effective October 1, 2011,"[14] Faulstick was permitted to step in and serve as co-pilot on the Hawker 4000 for a flight carrying the Duffs to Oxford, Mississippi, when a temporary pilot was unavailable.[15]

- On December 28, 2011, Douglas Blackwell (Southern Tire's human resource manger, who initially investigated and responded to Faulstick's EEOC complaint) authored a letter on Southern Tire Mart's letterhead advising that "Mr. Faulstick has been an exemplary employee during his tenure here at Southern Tire Mart, displaying great dependability and the utmost skill in his knowledge as one of our pilots.  We would recommend Mr. Faulstick, without hesitation, for any position that you may have available."[16]

Courts have found similar facts to counsel against summary judgment.  *See Russell*, 235 F.3d at 224 (reversing, in part, the district court's grant of the defendant's motion for judgment as a matter of law where the plaintiff received a favorable evaluation shortly before her termination and did not receive any formal warnings); *Matthews v. City of West Point, Miss.*, 863 F. Supp. 2d 572, 600 (N.D. Miss. 2012) (considering a letter of

---

[13] (Def.'s Resps. to Pl.'s Reqs. for Admis. [62-8] at p. 6.)

[14] (Def.'s Resps. to Pl.'s Reqs. for Admis. [62-8] at p. 3.)

[15] (*See* Faulstick Aff. [64-5] at ¶ 17; Def.'s Resps. to Pl.'s Reqs. for Admis. [62-8] at p. 5; T. Duff. Dep. [58-1] 50:2-54:7; J. Duff. [58-7] 36:25-41:22.)

[16] (*See* Doc. No. [64-2].)  Blackwell confirmed writing this letter of recommendation at his deposition.  (*See* Blackwell Dep. [66-11] 247:11-24.)  When questioned if Blackwell had authority to speak for Southern Tire, Thomas Duff testified that "[h]e certainly has authorization to send out a letter if he wants to for somebody."  (T. Duff. Dep. [58-1] 187:8-12.)  Blackwell's testimony that he had only limited information when he wrote the letter, and Thomas Duff's disagreement with the content of the letter can be weighed by the jury at trial.

recommendation that attested to the plaintiff's "superb talents" in concluding that a material fact dispute existed as to the matter of pretext); *Chavez v. Hydril Co.*, No. Civ.A. 301cv1494M, 2003 WL 22075740, at *5 (N.D. Tex. Feb. 18, 2003) (denying summary judgment where the plaintiff was offered a temporary position after he was laid-off by the defendant).

Fourth, certain comments purportedly made by the Duffs near the time of Faulstick's termination may be construed as additional circumstantial evidence of pretext. "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citing *Russell*, 235 F.3d at 225). Remarks or comments may give rise to an inference of discrimination if (1) they demonstrate discriminatory animus and (2) they are made by the individual primarily responsible for the subject employment decision or by an individual with influence over the decisionmaker. *Id.*[17] As noted above, Faulstick claims that James Duff told him Southern Tire was looking for "long term employment" when Faulstick asked why he was being discharged. It is also alleged that Thomas Duff advised Faulstick that he was being replaced by a "younger man" in the telephone conversation where Faulstick was notified of his termination. (Faulstick Dep. [58-3] 70:5-71:23.) Both Thomas Duff and James Duff "were involved with or otherwise responsible for making the decision to terminate Mr. Faulstick's employment . . . ." (Def.'s Resps. to

---

[17] The four-part test cited in section II.B.1. of this opinion only applies when remarks are alleged to constitute direct evidence of discrimination. *See Reed*, 701 F.3d at 441 (citations omitted).

Pl.'s First Set of Interrogs. [62-7] at p. 3.)  The Duffs' alleged statements and the inferences to be drawn therefrom, construed in favor of Faulstick, reflect age-related bias.  *Cf. Suggs v. Cent. Oil of Baton Rouge, LLC*, No. 13-25-RLB, 2014 WL 3037213, at *8 (M.D. La. July 3, 2014) (holding that workplace comments reflecting a bias against older workers constituted circumstantial evidence of age discrimination); *Stippick v. Stone & Webster Servs., LLC*, No. H-10-0290, 2011 WL 564081, at *8 (S.D. Tex. Feb. 8, 2011) ("[W]here a remark is capable of both a discriminatory and a benign inference, in the summary judgment context the inference must be drawn in favor of the nonmovant.") (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 683 (5th Cir. 2001)). The Duffs' purported statements are also not inadmissible hearsay given their subject matter and the speakers' positions within Southern Tire.  *See* Fed. R. Evid. 801(d)(2)(D); *Suggs*, 2014 WL 3037213, at *8.

Southern Tire's contention that Faulstick cannot demonstrate discriminatory animus because the Duffs, who are also protected by the ADEA, were the same individuals who hired Faulstick when he was 66 fails to mandate a grant of summary judgment.  The jury may find these circumstances to be persuasive, but the Court is unable to assign them controlling weight at this stage of the proceedings.  *See Russell*, 235 F.3d at 229 nn.16-17 (the jury could consider the defendant's assertion that the same person hired and fired the plaintiff, as well as the fact that the plaintiff and her supervisor were of similar ages); *Young*, 2000 WL 1029180, at *4 n.28 ("Contrary to HHC's assertion, the fact that Harris, Marks, and Hebert [Young's superiors] are all Caucasian and over forty years old, while persuasive, does not conclusively establish

that Young [a 51-year-old Caucasian female] was not terminated because of her age and/or race.") (citation omitted).

Viewing the facts in Faulstick's favor, the Court determines that his ADEA claim should proceed to trial. Simply stated, there are genuine issues of material fact as to whether Southern Tire terminated Faulstick because of his age.

### 3.    Liquidated Damages

A plaintiff may recover liquidated damages up to the amount of his or her back pay award for a willful violation of the ADEA. *See Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999) (citing 29 U.S.C. § 626(b)). A violation of the ADEA "is willful 'if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 398 (5th Cir. 2002) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 1708, 123 L. Ed. 2d 338 (1993)). The employer's conduct need not be considered outrageous in order for a willful violation of the ADEA to exist. *Id.* Nonetheless, liquidated damages are punitive in nature and should be reserved for egregious ADEA violations. *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)).

Given the disputed nature of the factual record before the Court and the parties' limited briefing regarding this issue, the Court will also allow Faulstick's request for liquidated damages under the ADEA to proceed to trial. The Court will be in a better position to decide whether the jury should be authorized to award these damages after the factual record has been developed through trial testimony and related evidentiary

submissions.  Moreover, Southern Tire certainly cannot claim ignorance of the

prohibition against age discrimination in employment since its Employee Handbook

"prohibit[s] harassment, discrimination, and retaliation based on age."[18]  *Cf. EEOC v.*

*DynMcDermott*, 537 Fed. Appx. 437, 449 (5th Cir. 2013) (finding that the district court

erred in granting summary judgment on the plaintiff's request for liquidated damages

under the ADEA where two supervisors obviously knew that age discrimination was

illegal); *Tyler*, 304 F.3d at 398-99 (considering the defendant's awareness of the

applicability of the ADEA per its policy manual in determining that there was sufficient

evidence for the jury to award liquidated damages).

### 4.    Certain Compensatory Damages

Southern Tire also seeks summary judgment on Faulstick's request for

"compensatory damages for pain and suffering, emotional distress, mental anguish, loss

of reputation, embarrassment, and humiliation . . . ."  (Compl. [1] at ¶ 32.)  Faulstick's

opposition to summary judgment fails to address this request for dismissal.  The Court

thus finds that Faulstick has abandoned any claim for these types of compensatory

damages.[19]  Even overlooking the Plaintiff's failure to respond to this dismissal request,

it is well established that compensation for non-economic losses, such as pain and

---

[18] (Def.'s Mem. Brief in Supp. of Mot. for SJ [59] at p. 2.)

[19] *See Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008) (finding that plaintiffs abandoned their claim for tortious breach of contract when their summary judgment response was limited to their bad faith claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (holding that the plaintiff's failure to pursue a claim beyond her complaint resulted in abandonment); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citation omitted).

suffering and mental anguish, is unavailable under the ADEA.[20]  Therefore, this portion

of the summary judgment motion is well taken and Faulstick's damage claims asserted

in Paragraph 32 of the Complaint will be dismissed.

## CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that Southern Tire's Motion to Strike [56] is

granted and Craig A. Silva, CPA is precluded from offering expert testimony at trial.

IT IS FURTHER ORDERED AND ADJUDGED that Southern Tire's Motion for

Summary Judgment [58] is granted in part and denied in part.  Plaintiff's demand for

compensatory damages for pain and suffering, emotional distress, mental anguish, loss

of reputation, embarrassment, and humiliation is dismissed with prejudice.  The motion

is otherwise denied.

SO ORDERED AND ADJUDGED this the 11th day of August, 2014.


                                        *s/ Keith Starrett*
                                        UNITED STATES DISTRICT JUDGE

---

[20] *See, e.g.*, *Comm'r v. Schleier*, 515 U.S. 323, 326, 115 S. Ct. 2159, 132 L. Ed. 2d
294 (1995); *Smith*, 165 F.3d at 396; *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1038
(5th Cir. 1977); *Hall v. Smurfit-Stone Container Enters., Inc.*, No. 3:07cv0501-G, 2007
WL 2254942, at *2 (N.D. Tex. July 23, 2007); *Dowlearn v. Baker Oil Tools, Inc.*, No.
Civ.A. 97-2787, 1997 WL 767721, at *3 (E.D. La. Dec. 10, 1997).